IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 21, 2008

Charles R. Fulbruge III
Clerk

No. 07-30955
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

DENNIS H. JOHNSON

Defendant-Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:06-CR-98

Before JOLLY, CLEMENT, and HAYNES, Circuit Judges

PER CURIAM:[*]

Dennis H. Johnson was convicted by a jury of being a felon in possession of a firearm, possession of cocaine base ("crack cocaine") with intent to distribute, and possession of a firearm in furtherance of a drug trafficking crime. Johnson argues that the district court erred in denying his motion to suppress evidence contained in a fanny pack he left at 4279 Odell Street. He also seeks to suppress statements he made after being confronted with the contents of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

fanny pack, which he claims are the fruit of the poisonous tree. For the reasons stated below, we affirm.

I.

The evidence adduced at the suppression hearing shows that Johnson and Darold Williams were standing in front of a house at 4279 Odell Street, across the street from Johnson's residence, when police officers arrived to investigate a complaint regarding drug trafficking at Johnson's residence. Johnson, who was wearing a fanny pack, told Williams that he "need[ed] to talk to" him. The men then went into the house at 4279 Odell Street, which was where Williams was temporarily living. Once inside, Johnson asked Williams to hold the fanny pack for him. Despite Williams's refusal, Johnson placed the fanny pack in the laundry room. Johnson then emerged from the house at 4279 Odell Street and went to his residence.

Police officers, who noticed that Johnson was no longer wearing the fanny pack, went to the house at 4279 Odell Street and spoke with the owner, Williams's sister-in-law. After the officers explained their concerns about the fanny pack, the owner permitted the officers to search the house and take away any drugs that Johnson may have hidden. The officers searched the house and, with Williams's assistance, located the fanny pack hidden in the laundry room. Upon picking up the fanny pack, an officer felt the outline of a pistol inside. At that point, the officer opened the fanny pack to secure the suspected weapon. In addition to the weapon, the officer found crack cocaine and cash inside the fanny pack. Later, Johnson admitted to the officers that the fanny pack and its contents were his.

Johnson moved to suppress evidence contained in a fanny pack and statements he made after being confronted with the contents of the fanny pack. The district court concluded that, at most, Johnson was a guest present with the consent of a member of the household, and that as such, he did not have a reasonable, legitimate expectation of privacy in the fanny pack.

On appeal, Johnson argues that the focus of this court's inquiry should not be on the search of 4279 Odell Street, which Johnson apparently concedes did not violate his Fourth Amendment rights, but rather should be on the search of the fanny pack itself. He contends that he had a reasonable expectation of privacy because he exhibited an actual expectation of privacy in the closed and zipped fanny pack and its contents. He asserts that the legitimacy of his expectation of privacy was not diminished because it was "temporarily stored" at a friend's house. We disagree.

## II.

When reviewing a district court's grant or denial of a motion to suppress evidence under the Fourth Amendment, we review a district court's factual determinations for clear error and its ultimate Fourth Amendment conclusions de novo. United States v. Gonzalez, 328 F.3d 755, 758 (5th Cir. 2003). We view the evidence introduced at a suppression hearing in the light most favorable to the prevailing party. Id.

"[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . ." Minnesota v. Carter, 525 U.S. 83, 88 (1998) (internal quotation and citation omitted). The defendant bears the burden of establishing a reasonable expectation of privacy by a preponderance of the evidence. United States v. Vega, 221 F.3d 789, 795 (5th Cir. 2000).

Johnson's arguments center on the Supreme Court's decision in Bond v. United States, 529 U.S. 334, 336-37 (2000). In Bond, the defendant was a passenger on a bus which had been stopped at an immigration checkpoint. Id. at 335. An immigration officer boarded the bus, confirmed the immigration status of the passengers, and on departing the bus, "squeezed the soft luggage which passengers had placed in the overhead storage space above the seats." Id. In one canvas bag he felt a brick-like object. Id. at 336. The defendant admitted

the bag was his and consented to have the bag searched, and the agent discovered a brick of methamphetamine. Id. The Supreme Court held that the search violated the Fourth Amendment, noting that Bond had specifically attempted to preserve his privacy by using an opaque bag and by placing the bag over his seat. Id. at 338. The Court also noted that even though a bus passenger may expect his bag to be handled by other passengers or bus employees, he does not reasonably expect that anyone will feel or manipulate the bag in an exploratory manner. Id. at 338-39. The Court held that the agent's physical manipulation of the passenger's carry-on luggage violated the Fourth Amendment's proscription against unreasonable searches. Id. at 339.

However, Bond does not hold that a person has a reasonable expectation of privacy for any closed container no matter where the defendant leaves it, as Johnson suggests. The Supreme Court based its decision in Bond on the specific facts of the case, that is, a person traveling by bus with a closed bag stowed in the luggage compartment overhead. Id. at 338.

In contrast to the defendant in Bond, Johnson abandoned his fanny pack in someone else's home against the occupant's express wishes. "[A]ny guest, in appropriate circumstances, may have a legitimate expectation of privacy when he is there 'with the permission of his host, who is willing to share his house and his privacy with his guest.'" United States v. Phillips, 382 F.3d 489, 496 (5th Cir. 2004) (quoting United States v. Fields, 113 F.3d 313, 321 (2d Cir. 1997)) (emphasis added). But when an individual hides evidence in the home of unwilling, innocent bystanders, then any subjective expectation of privacy is unreasonable and is not protected by the Fourth Amendment. See id. at 496-97.

This case is similar to the facts considered by this court in Phillips. There, Phillips lifted the tin roof of a storage shed in the backyard of a residence and dropped a grocery bag into the shed. 382 F.3d at 492. Thompson, the owner of the property, agreed to open the shed for the police, who suspected that the bag

contained contraband.  Id.  Police recovered the bag, which contained crack cocaine and a scale.  Id.  Phillips argued that he had a reasonable expectation of privacy in the residence, including the backyard shed, based on "the longstanding familial relationship" between his family and the Thompson family.  Id. at 494.

Testimony at the suppression hearing revealed that "the two families took trips together, threw parties together, and generally acted like one family."  Id. at 495.  Phillips "frequently had spent the night" at the residence in the past, but he had not done so in the five or six months preceding the incident.  Id.  As a child, Phillips and a youngster from the other family sometimes went into the shed "when it was raining and stuff, . . . to listen to the radio."  Id.  However, Thompson had exclusive use of the shed and had the only key.  Id.  Thompson did not allow others to store things in the shed without her permission, and Phillips "never obtained permission to use the shed for any purpose, let alone for the storage of cocaine."  Id.

This court determined that the district court had properly denied the motion to suppress.  See id. at 496-97.  The court noted that there was no evidence that Phillips was utilizing the shed for anything other than a commercial purpose, the storage of contraband for later distribution.  Id. at 496.  Even if it were assumed that Phillips could establish that he had a reasonable privacy interest in the Thompson residence based on his prior relationship with the owner, Phillips "had not shown that he was using the shed with the permission of Thompson or that Thompson was willing to share her privacy [interest in the shed] with the defendant."  Id. at 496.  This court determined that "Phillips cannot show that he was legitimately in the Thompson yard because Thompson never gave him permission to use the shed; as to the shed, Phillips' presence was wrongful."  Id. at 497.

Here, although Johnson had a prior relationship with Williams, there is no evidence that he ever had the permission of the occupants or owner of 4279

5

Odell Street to use that home for storage. On the day in question, Johnson asked Williams for permission to store his fanny pack, but Williams refused. Johnson then proceeded to leave the fanny pack in the home despite Williams's wishes. As we held in Phillips, Johnson had no right to object to the consensual search of 4279 Odell Street, had no reasonable expectation of privacy in the contraband he left there, and cannot complain that the results of that search were used as evidence against him. See 382 F.3d at 496-97.

While Johnson argues that Williams's refusal to allow him to leave the fanny pack concerns only the search of 4279 Odell Street, these circumstances also must be considered when deciding whether Johnson had a reasonable expectation of privacy for the fanny pack itself. This court has held that a defendant who abandons or disclaims ownership of a suitcase has no legitimate expectation of privacy in that suitcase or its contents and, therefore, cannot challenge a search of that suitcase. United States v. Roman, 849 F.2d 920, 922-23 (5th Cir. 1988). Although Johnson argues that he did not intend to relinquish ownership of the fanny pack, he "need not have abandoned the searched item in the strict property sense, where an intent to relinquish ownership must be shown; merely an intent voluntarily to relinquish his privacy interest is sufficient." United States v. Barlow, 17 F.3d 85, 88 (5th Cir. 1994). Johnson abandoned all control of the fanny pack by leaving it at 4279 Odell Street without permission of the home's occupants, and thus he could not have reasonably expected that the contents of the fanny pack would remain private.

Because we hold that the district court did not err in admitting evidence from the search of Johnson's fanny pack, we need not reach Johnson's "fruit of the poisonous tree" claims.

The judgment of the district court is AFFIRMED.